O
JS-6

# United States District Court
# Central District of California

DONNA MICHELLE ACEVEDO; and J.M., a minor child, through his guardian MICHELLAY DONNALI VENTURA,

    Plaintiffs,

v.

CITY OF ANAHEIM; KELLY PHILLIPS; TRANG PHAM; DANIEL LAMBAREN; and DOES 1–10, inclusive,

    Defendants.

Case No. 8:14-cv-01147-ODW(E)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [25]**

## I.  INTRODUCTION

Defendants City of Anaheim, Kelly Phillips, Trang Pham, and Daniel Lambaren ("Defendants") move for summary judgment on the grounds that (1) Officer Kelly Phillips shot Joel Acevedo ("Acevedo") in self-defense and (2) Plaintiffs cannot establish a genuine issue of material fact as to any claim made against Defendants. (ECF No. 25.)  For the reasons discussed below, the Court **GRANTS** Defendants' Motion in its entirety.[1]

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

## II. FACTUAL BACKGROUND

Before the Court is Plaintiffs' suit against the City of Anaheim and several of its police officers. Plaintiffs' claims arise out of the tragic death of Joel Acevedo, who was shot and killed by Officer Phillips on July 22, 2012. (Compl. ¶¶ 23–31.)

As told by Defendants, on the night in question Officers Phillips, Pham, and Lambaren were assigned to a three-man gang suppression unit of the Anaheim Police Department ("APD"). (Defendants' Statement of Uncontroverted Facts ("SUF") ¶ 1, ECF No. 26.) While patrolling in an APD vehicle, Officer Phillips allegedly recognized a woman traveling in a silver Lexus sport utility vehicle. (*Id.* ¶ 2.) Based on prior dealings, Officer Phillips believed the woman, Vanessa Janine Duran ("Duran"), to be affiliated with the criminal street gang Anaheim Vatos Locos ("AVLS"). (*Id.*) Noticing an unlit rear license plate on the Lexus in violation of California Vehicle Code § 24601, the officers began to follow the Lexus. (*Id.* ¶ 3.) The officers observed the vehicle fail to completely stop at two stop signs and begin to accelerate. (*Id.* ¶¶ 3–4.) The officers then activated their emergency lights and sirens, believing Duran was attempting to evade the tailing police. (*Id.* ¶ 4.)

Now in pursuit of a fleeing vehicle, the officers tailed the Lexus as it reached speeds nearing 60 MPH. (*Id.* ¶ 5.) Officer Lambaren notified APD of the pursuit. (*Id.*) As the Lexus attempted to turn eastbound from Palm Street onto West Guinida Lane (known to the officers as the "main street" for AVLS activity), the vehicle skidded across the intersection, collided with the curb, blew out its tires, and continued to travel into a vacant lot on the corner of the intersection before stopping. (*Id.* ¶ 6.) A male subject, later identified as Jose Gaudencio Hernandez ("Hernandez"), then exited the stopped Lexus, dropping and then catching an item from his sweatshirt pocket that appeared to the officers to be heavy. (*Id.* ¶¶ 7–8.) Officer Phillips immediately believed the falling object might be a firearm. (*Id.* ¶ 8.) Two other individuals then exited the crashed vehicle. (*Id.* ¶ 9.) Officer Phillips

1  observed Duran exit via the driver's side door while another male in a dark sweatshirt,
2  later identified as Acevedo, exited from the front passenger door. (*Id.*)

3  The officers parked their patrol vehicle and each officer began chasing the three
4  suspects as they fled the scene. (*Id.* ¶ 10.) Officer Phillips assisted Officer Pham in
5  pursuing Duran and Hernandez while Officer Lambaren chased Acevedo southbound
6  across the vacant parking lot and around the corner into another parking lot. (*Id.*¶¶
7  10–11.) As Acevedo fled, Duran managed to escape apprehension and Officers Pham
8  and Phillips turned their attention to Hernandez, whom they believed to be armed.
9  (*Id.* ¶ 12.) While in pursuit of Hernandez, the officers observed Acevedo running
10 northbound towards them and then ducking behind a parked vehicle. (*Id.* ¶ 13.)
11 Concurrently, Officer Lambaren entered the parking lot from the south and observed
12 Hernandez running toward him; Hernandez collapsed within feet of Officer
13 Lambaren, and the officer took him into custody. (*Id.* ¶ 15.)

14 Meanwhile, Officers Pham and Phillips continued to search for Acevedo
15 amongst the parked vehicles. (*Id.* ¶ 16.) Officer Phillips saw "a flash of dark,"
16 believed to be Acevedo, moving behind the parked vehicles and heading northward.
17 (*Id.* ¶ 17.) As Officer Phillips walked toward where he spotted the dark silhouette,
18 Officer Pham walked eastbound through the vehicles in pursuit of Acevedo. (*Id.*)
19 Officer Phillips again observed a dark silhouette moving behind the vehicles; thinking
20 Acevedo intended to hide in the parking lot, the officer drew his weapon. (*Id.*)
21 Officer Phillips approached a white Honda SUV and again saw the darkened figure
22 "pop up" in front of the Honda. (*Id.* ¶ 18.) As the figure disappeared again, Officer
23 Phillips claims to have heard a gunshot. (*Id.*) Hiding behind the Honda, Officer
24 Phillip peered around the vehicle and allegedly saw Acevedo again "pop up" from the
25 front of the Honda and disappear to the sound of a second gunshot. (*Id.* ¶ 19.)

26 As Officer Phillips tells it, at this moment he thought to himself, "This went
27 from a gangster running and hiding to gangster trying to kill me." (*Id.*) Believing the
28 situation now demanded an offensive attack, Officer Phillips moved around the

vehicle and as soon as he saw Acevedo's darkened shadow, he shot. (*Id.* ¶ 20.) He fired four rounds rapidly toward the shadow; then able to clearly see Acevedo, he observed him fall to his right side with a firearm in his right hand. (*Id.* ¶ 21.)

Officer Pham heard, but did not observe, three to four gunshots. (*Id.* ¶ 22.) Walking toward Officer Phillips, Officer Pham observed Acevedo lying partially on his right side with a gun between his knees and a hand on or near the gun. (*Id.* ¶ 23.) For "safety's sake," Officer Phillips kicked the firearm from Acevedo's hand; the gun landed between Acevedo's legs. (*Id.* ¶ 24.) The officers then rolled Acevedo to his left side and handcuffed him before rolling him onto his back. (*Id.* ¶ 25.) Phillips radioed to report the shooting and one of the officers called for medical help; the paramedics arrived "within minutes." (*Id.* ¶¶ 25–26; *see also* Chief Raul Quezada Decl. ¶ 10 ("Anaheim Fire Dept. paramedics were dispatched and arrived within minutes of this officer involved shooting.").)

Plaintiffs, in turn, tell a different story—though it is an admittedly sparse tale. Plaintiffs concede that Acevedo was in the Lexus SUV; that the police pursued the vehicle until the crash; that the vehicle's occupants, including Acevedo, attempted to flee the scene; and that Officer Phillips chased down Acevedo. (Compl. ¶¶ 23–25.) However, Plaintiffs allege that Acevedo was not armed, and that Officer Phillips handcuffed Acevedo before shooting him in the head without warning. (*Id.* ¶¶ 26–28.) Plaintiffs also contend that the officers altered the scene to conceal their conduct. (*Id.* ¶ 31.)

On July 23, 2014, Plaintiffs filed the attendant lawsuit, bringing four claims under 42 U.S.C. § 1983: (1) violation of the Fourth Amendment's prohibition against unreasonable search and seizure; (2) excessive use of force and denial of medical care; (3) violations of substantive due process against the named officers; (4) and municipal liability against the City of Anaheim for an unconstitutional custom or policy. (*Id.* ¶¶ 32–67.) Plaintiffs also bring battery and civil rights claims under California law. (*Id.* ¶¶ 68–82.)

On August 20, 2015, Defendants moved for summary judgment (Mot., ECF. No. 25.) The Court rescheduled the motion hearing to January 4, 2016, and informed the parties that opposition briefing would be due on December 14, 2015, and any reply on December 21, 2015. (ECF No. 42.) Even with the ample additional time, Plaintiffs failed to file an opposition. (*See* ECF Nos. 43–44.) Defendants' Summary Judgment Motion is now before the Court for decision.

### III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also* Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. Nat'l Wildlife Fed'n,* 498 U.S. 871, 888 (1990); *see also Celotex*, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id* at 322; *see also Abromson v. Am. Pac. Corp.*, 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. *T.W. Elec. Serv., Inc. v. Pac Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). When deciding a motion for summary judgment, "the interferences to be drawn from the underlying facts . . . must be viewed in the light

most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(citation omitted); *Valley Nat'l Bank of Arizona v. A.E. Rouse & Co.,* 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. *Matsushita*, 475 U.S. at 587.

"[A] district court[, however,] may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition." *Tilley v. Tracy*, No. C 03–5701 PJH (PR), 2007 WL 951835, *2 (N.D. Cal. Mar.27, 2007) (citing *Cristobal v. Siegal*, 26 F.3d 1488, 1494–95 & n.4 (9th Cir. 1994) (an unopposed motion may be granted only after court determines that there are no material issues of fact)); *see also Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) (a district court's discretion under the local rules to grant a motion on the basis that it is unopposed "is necessarily abused when exercised to grant a motion for summary judgment where the movant's papers are insufficient to support that motion or on their face reveal a genuine issue of material fact"); *Reed v. Sandstone Properties, L.P.*, No. CV 12-05021 MMM VBKX, 2013 WL 1344912, at *6 (C.D. Cal. Apr. 2, 2013).

However, when the opposing party fails to challenge the facts asserted by the moving party in the manner required by Federal Rule of Civil Procedure 56(c), the Court may consider the facts undisputed (or "deemed admitted") for purposes of the motion and grant summary judgment where the undisputed facts, the motion, and its supporting papers show that the movants are so entitled. FRCP 56(e)(2)–(3); Local Rule 56-3; *Beard v. Banks*, 548 U.S. 521, 527 (2006) (failure to specifically challenge facts identified in moving party's statement will be deemed admission of those facts).

The court thus turns to the merits of Defendants' motion.

## IV. DISCUSSION

Defendants move for summary judgment, contending that Plaintiffs' § 1983 claims have no factual support and that Defendants' actions during the course of a rapidly unfolding police action were reasonable under the law. (Mot. 9.) Because

Plaintiffs failed to file any opposition, the Court will accept Defendants' facts as admitted and determine whether these facts counsel summary judgment on each of Plaintiffs' claims.

## A. FOURTH AMENDMENT CLAIMS

### a. Unreasonable Search and Seizure

Plaintiffs first contend that Acevedo was detained without reasonable suspicion. (Compl. ¶ 35.) However, Defendants' facts clearly show that the officers had probable cause under the Fourth Amendment to detain Acevedo and the other passengers in the Lexus SUV. The Court therefore finds no genuine dispute over any material fact and grants summary judgment on the seizure claim.

Plaintiffs allege that Defendant officers had no reason to detain his companion's vehicle, and therefore Acevedo himself. (Compl. ¶ 29.) However, police stops are legal so long as officers reasonably suspect a violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Willis*, 431 F.3d 709, 715 (9th Cir. 2005) ("*Whren* stands for the proposition that if the officers have probable cause to believe that a traffic violation occurred, the officers may conduct a traffic stop even if the stop serves some other purpose."). Here, the officers observed Duran driving a vehicle without an illuminated rear license plate in clear violation of California Vehicle Code § 24601. (SUF ¶ 3.) Even a simple traffic violation gives an officer license to detain a vehicle. *Whren*, 517 U.S. at 810. Moreover, Duran's subsequent failure to observe posted stop signs gave further license for a stop. (*See* SUF ¶¶ 3–4.)

The observed moving violations gave the officers probable cause for a traffic stop, and the subsequent car chase lends further probable cause for seizure of the vehicle's passengers. (*See id.* ¶¶ 3–6.) Though Acevedo's presence in an area with known criminal activity, standing alone, cannot support reasonable suspicion, the fact that he and the others began to flee does. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

The Court therefore grants summary judgment for Defendants as to Plaintiffs' unreasonable seizure claim.

### b. Excessive Use of Force

At the crux of Plaintiffs' allegations sit their excessive force claim. However, the Court has only Defendants' facts, and based on those alleged, Plaintiffs' Fourth Amendment excessive force claims likewise do not survive summary judgment.

Claims alleging that law enforcement officers have used excessive force in the course of a "seizure" are analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Conner*, 490 U.S. 386, 395 (1989). The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* at 396. The calculus of reasonableness must embody an allowance for the fact that police officers are often forced to make split second judgments in circumstances that are tense, uncertain, and rapidly evolving; the amount of force that is necessary is unique to every particular situation. *Id.* at 396–97. The factors considered in determining the reasonableness of the officer's conduct are: (1) the severity of the underlying offense; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396.

Defendants here had sufficient suspicion to seize Acevedo with deadly force. Acevedo and his compatriots led officers on a high-speed chase through the city of Anaheim, only ending when the vehicle skidded through an intersection and blew out its tires. (SUF ¶¶ 3–6.) Such reckless behavior could have caused irreparable harm to property or person, and would constitute a felony under California law. *See* Cal. Vehicle Code § 2800.2. Moreover, the officers believed that Hernandez was armed, which would then reasonably lead the officers to be concerned that other passengers of the Lexus were likewise armed. (*Id.* ¶¶ 7–8.) Such a suspicion was confirmed when Acevedo shot at Officer Phillips during the foot chase. (*Id.* ¶¶ 18–19.) Finally,

Defendants' statements clearly show that Acevedo and the others were attempting to evade arrest. The car chase through the city, the subsequent foot chase, and then the cat-and-mouse game in the darkened parking lot all show that Acevedo and his companions were attempting to flee. (*Id.* ¶¶ 3–6, 10–13, 17–19.)

Officer Phillips, therefore, could reasonably believe that Acevedo posed a threat of serious physical harm, either to fellow officers, himself, or bystanders, and could validly subdue him with deadly force. *See Tennessee v. Gardner*, 471 U.S. 1, 11 (1985) (where an officer reasonably believes a suspect poses a danger to himself or others, an officer may seize that suspect using lethal means); *see also Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) (reasonable use of deadly force encompasses a range of conduct, and the availability of a less-intrusive alternative will not render conduct unreasonable).

Officer Phillips shot Acevedo in defense of self and of others and, without any proffered evidence of Defendants' provocations, Officer Phillips' conduct does not amount to excessive force. *See Billington v. Smith*, 292 F.3d 1177, 1189 (9th Cir. 2002). The Court grants summary judgment for Defendants.

### c. Denial of Medical Care

Plaintiffs further contend that Defendants unconstitutionally failed to provide timely medical treatment after Acevedo's arrest, resulting in "significant injury or the unnecessary pain and suffering" of Acevedo. (Compl. ¶¶ 41–43.) Again, taking Defendants' facts as true, this contention also fails.

"The Ninth Circuit analyzes claims regarding deficient medical care during and immediately following an arrest under the Fourth Amendment." *Mejia v. City of San Bernardino*, No. EDCV 11-00452 VAP, 2012 WL 1079341, at *5 (C.D. Cal. Mar. 30, 2012) (citing *Tatum v. City and Cnty. of S.F.*, 441 F.3d 1090, 1098–99 (9th Cir. 2006) (explaining that while the Supreme Court has analyzed such claims under the Due Process Clause of the Fourteenth Amendment in the past, it appears that the Fourth Amendment is the proper authority following the decision in *Graham v. Connor*, 490

U.S. 386 (1989))). The Fourth Amendment requires law enforcement officers to provide objectively reasonable post-arrest care to an apprehended suspect. *Tatum*, 441 F.3d 1099. Though the precise contours of this objectivity test are unclear, it is clear that "a police officer who promptly summons ... necessary medical assistance has acted reasonably for purposes of the Fourth Amendment[.]" *Id.*; *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 245 (1983) ("Whatever the standard may be, [the defendant] fulfilled its constitutional obligation by seeing that [the apprehended person] was taken promptly to the hospital that provided the treatment necessary for his injury.").

Here, the uncontroverted evidence indicates that immediately after securing Acevedo, Officers Phillips and Pham reported an officer-involved shooting over their radios and called for the paramedics, who arrived "within minutes." (SUF ¶¶ 25–26; *see also* Chief Raul Quezada Decl. ¶ 10 ("Anaheim Fire Dept. paramedics were dispatched and arrived within minutes of this officer involved shooting.").) Accordingly, as the officers promptly summoned medical care for Acevedo, they acted "reasonably for purposes of the Fourth Amendment[.]" *Tatum*, 441 F.3d at 1099. Plaintiffs therefore cannot maintain their claims based on a denial of medical care.

### B. SUBSTANTIVE DUE PROCESS

Plaintiffs next claim that the APD officers' actions deprived Acevedo's son of his substantive due process right of familial association in "such a manner as to shock the conscience." (Compl. ¶ 48.) Again, the uncontroverted facts counsel in favor of summary judgment.

To recover under the Fourteenth Amendment Substantive Due Process Clause, Plaintiffs must show that the officers' use of force "shocks the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Where an officer does not have the "opportunity for actual deliberation," the evidence must show that the officer acted

with a "purpose to harm" to meet the "shocks the conscience" standard. *Porter v. Osborn*, 546 F.3d 1131, 1137–40 (9th Cir. 2008).

In the case at bar, it is clear that Officers Phillips, Pham, and Lambaren were forced to respond in the moment to a rapidly unfolding situation and lacked any opportunity for "actual deliberation." The officers faced a high-speed car chase, a foot chase through abandoned parking lots, and then gunfire in rapid succession. (SUF ¶¶ 4–7, 10–20.) As Officer Phillips recounts, when he heard the second of two gun shots, he thought to himself, "This went from a gangster running and hiding to gangster trying to kill me" and that "at that point, it was pure survival; he is going to kill me or I am going to kill him and I do not want to die today." (*Id.* ¶ 19.) This was not a situation that allowed for a calm, collected, and reflective pre-response deliberation, and therefore the officers' choice to employ deadly force only constitutes a substantive due process violation where it is employed "maliciously and sadistically for the very purpose of causing harm." *Lewis*, 523 U.S. at 853. Self-defense is certainly not a malicious or sadistic response. Accordingly, the Court grants summary judgment for Defendants as to the Fourteenth Amendment claim.

### C. MUNICIPAL LIABILITY

Plaintiffs allege that the unconstitutional policies, practices, or customs of the City of Anaheim were the cause in fact of Plaintiffs' constitutional deprivations. *See Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690–92 (1978). Because Defendants' uncontroverted facts show otherwise, the Court grants summary judgment.

Plaintiffs contend that the City of Anaheim had an unconstitutional "policy, custom and practice of detaining and arresting individuals without probable cause or reasonable suspicion, and using excessive force, including deadly force." (Compl. ¶ 59(J).) In *Monell*, the Supreme Court held that municipalities cannot be held liable for injuries caused by its employees or agents under a respondeat superior theory, and instead plaintiffs must establish an unconstitutional custom, practice, or policy for § 1983 liability to attach. 436 U.S. at 694. To succeed, a plaintiff must prove three

elements: (1) that the officer acted under color of law; (2) that the actions alleged deprived the plaintiff of his or her rights under the Constitution and (3) that the officer acted pursuant to an expressly adopted official policy or longstanding practice or custom. *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

Defendants concede that the officers were acting under the color of law on the night in question. (Mot. 21.) However, Plaintiffs cannot meet the second element because, as the Court discussed above, Plaintiffs have not produced any evidence establishing a violation of their rights or Acevedo's rights. A discussion of the third element is therefore unnecessary, though Plaintiffs' claims likewise fail. Plaintiffs offer no evidence of any pattern or practice of excessive force or constitutional searches or seizures. Defendants, in turn, offer evidence showing that all officers are trained on appropriate search, seizure, and use of force requirements. (SUF ¶¶ 27–35.)

Plaintiffs have failed to establish that the City of Anaheim maintained an unconstitutional policy, practice, or custom which was the cause in fact of a violation of constitutional rights, and therefore cannot support their municipal liability claim.

### D. STATE LAW CLAIMS

#### a. Battery

Plaintiffs allege battery claims under California law. Excessive force claims analyzed under the battery statute are judged using the same reasonableness standard used in Fourth Amendment claims. *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1274 (1998) (Section 1983 is "the federal counterpart of state battery or wrongful death actions") (citing *Reynolds v. Cnty. of San Diego*, 858 F.Supp. 1064, 1069 (S.D.Cal. 1994), *affd. in part and remanded in part*, 84 F.3d 1162 (9th Cir. 1996)). Because Plaintiffs' constitutional excessive force claims fail to survive summary judgment, so too does their battery claim.

#### b. California Civil Code Section 51.7

Finally, Plaintiffs claim that each Defendant violated California Civil Code Section 51.7, which Plaintiffs refer to colloquially as the "Ralph Bane Act."[2] (Compl. 14.) Section 51.7 gives individuals "the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of" a variety of protected characteristics, including race, disability, religion, sex, or political affiliation. *See also Walker v. City of Hayward*, No. C07-6205 TEH, 2008 WL 2357249, at *6 (N.D. Cal. June 6, 2008).

Plaintiffs allege no facts to support this claim that deviate from those alleged for the excessive force and substantive due process claims. Where those arguments have failed and where no evidence exists to support any allegation of discrimination based on a protected class, this Court grants summary judgment for Defendants.

## V. CONCLUSION

Accordingly, for the reasons discussed above, Defendants' Motion for Summary Judgment is **GRANTED** in its entirety.

**IT IS SO ORDERED.**

January 6, 2015

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

---

[2] The correct name for the legislation is the Ralph Civil Rights Act.